# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3585

_____

United States of America,　　　　　　 *
　　　　　　　　　　　　　　　　　　　　*
　　　　　　Plaintiff/Appellee,　　　　　 *
　　　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　　　　　 *　District Court for the Southern
　　　　　　　　　　　　　　　　　　　　*　District of Iowa.
Adrian F. Searcy,　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　　*
　　　　　　Defendant/Appellant.　　　　　*

_____

Submitted: September 12, 2000
Filed: November 13, 2000

_____

Before WOLLMAN, Chief Judge, LAY, and BRIGHT, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Adrian Searcy pleaded guilty to possessing cocaine base ("crack") with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court rejected his sentencing entrapment claim, granted Searcy a two-level acceptance of responsibility reduction under U.S.S.G. § 3E1.1(a), and denied him the one-level reduction granted by § 3E1.1(b). Searcy was sentenced to 110 months imprisonment and 4 years of supervised release.

Searcy appeals his sentence, arguing that the district court improperly rejected his sentencing entrapment claim and that the district court erred when it refused to grant

him a full three-level reduction in offense level for acceptance of responsibility under § 3E1.1. For the following reasons, we affirm in part and we remand for sentence reconsideration.

## I.    BACKGROUND

In 1997, Special Agent Leonard Mendoza, of the Illinois State Police, arrested Andre Watkins for selling crack. Watkins began cooperating with the government to obtain a leniency recommendation, he became a confidential informant for the government, and he agreed to identify drug dealers in the Quad Cities area of Iowa and Illinois. Watkins began working as a confidential informant for the government and he acted with Agent Mendoza's knowledge and acquiesce. Watkins knew that his friend, Adrian Searcy, was a powder cocaine dealer and a crack user and he thought he could get Searcy to sell crack.

On January 15, 1998, Watkins asked Searcy for some crack. Searcy said that he did not sell crack, just powder. They had five or six conversations over four weeks and Watkins repeatedly asked Searcy for crack. Finally, Searcy agreed, and on February 19, 1998, Watkins went to Searcy's home to buy 8.6 grams of crack.

Watkins saw three ounces of powder cocaine on a table at Searcy's home, he bought the crack, and he reported to Agent Mendoza. He told Agent Mendoza about the three ounces of powder cocaine on the table. Agent Mendoza told Watkins to go back to Searcy's home and to ask for more crack. The next day, Searcy was arrested when he delivered 28.6 grams of crack to Watkins.

On October 15, 1998, a grand jury sitting in the Southern District of Iowa charged Searcy with one count of conspiracy to distribute crack, one count of distributing crack on February 19, 1998, and one count of possession with intent to distribute crack on February 20, 1998. See 21 U.S.C. § 846; see also U.S.C. § 841(a).

Searcy was arrested on October 28 and arraigned on October 29, 1998. He pleaded not guilty and the district court set the trial date for December 28, 1998. On December 3, the magistrate judge scheduled the final pretrial conference for December 18. On December 18, the pretrial conference was rescheduled for January 12, 1999, and the jury trial was rescheduled for January 25. On January 5, the pretrial conference was rescheduled for January 15. On January 12, Searcy entered into a plea agreement with the government and on January 22, he entered a guilty plea for Count One, conspiracy to distribute crack, and he was released. The sentencing hearing was scheduled for April 16.

The next morning police responded to a complaint and found Searcy hosting a loud party at his home. The police arrested Searcy for disorderly conduct and for giving alcohol to minors. The government moved to revoke Searcy's conditions of release, an arrest warrant was issued, Searcy was arrested and detained, and his release was revoked. Searcy appealed the magistrate judge's ruling to the district court, his appeal was denied, his bond was revoked, and he was detained pending sentencing. The government withdrew its first plea agreement, Searcy entered into a second plea agreement, and sentencing was again rescheduled. Ultimately, Searcy pleaded guilty to Count Three, possession of crack, and the government dropped Counts One and Two.

On September 7, 1999, the district court rejected Searcy's sentencing entrapment claim, partially denied his request for a three-level acceptance of responsibility reduction, and sentenced Searcy to 110 months imprisonment and 4 years of supervised release.

## II.    DISCUSSION

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.

## A.    Sentencing Entrapment

Searcy argues that he is entitled to a recalculation of his sentence because he was a victim of sentencing entrapment.[1] He also argues that the district court applied the wrong standard when it determined that he was not a victim of sentencing entrapment. The government argues that Searcy is not entitled to a recalculation of his sentence because the district court correctly analyzed the sentencing entrapment question and properly determined that Searcy was not a victim of sentencing entrapment. The government claims that to succeed on his sentencing entrapment claim, Searcy must show, by a preponderance of the evidence, that the government acted outrageously and that he was not predisposed to commit the crime.

We review the application of the Sentencing Guidelines de novo. See United States v. Bender, 33 F.3d 21, 23 (8th Cir. 1994) (applying the de novo standard where district court made a legal interpretation of the Sentencing Guidelines and applied that interpretation to the facts of the case); see also United States v. Mills, 987 F.2d 1311, 1315 (8th Cir.), cert. denied, 510 U.S. 953 (1993).

---

[1] When Searcy pleaded guilty he waived his right to raise entrapment as a defense to the elements of the crime. See Peoples v. United States, 412 F.2d 5, 7 (8th Cir. 1969) (determining that guilty plea waives all defenses); see also United States v. Newson, 46 F.3d 730, 732 (8th Cir. 1995) (determining that guilty plea waives entrapment defense). A guilty plea, however, does not waive the defendant's right to raise sentencing entrapment as a valid basis for a downward departure under the Sentencing Guidelines. See United States v. Calva, 979 F.2d 119, 123 (8th Cir. 1992) (determining that defendant's guilty plea waived entrapment defense but not sentencing entrapment claim).

This case demonstrates that the Sentencing Guidelines have a "terrifying capacity for escalation of a defendant's sentence" as a result of government misconduct. United States v. Barth, 990 F.2d 422, 424 (8th Cir. 1993) (internal quotations omitted). The Guidelines link drugs to specific sentencing ranges based primarily upon the sheer quantity or kind of drugs involved in an offense. Therefore, relatively small differences in the quantity or kind of drugs involved in an offense may dramatically alter a defendant's prison term. The danger of government abuse is great because in many cases, including this one, the government may influence and, in some cases control, the quantity and kind of a drug involved in the offense. See id. To ameliorate the danger of government abuse we have recognized sentencing entrapment as a viable theory for a downward departure under the Sentencing Guidelines. See United States v. Lenfesty, 923 F.2d 1293, 1300 (8th Cir.), cert. denied, 499 U.S. 968 (1991).

The Sentencing Guidelines also recognize sentencing entrapment as a viable basis for a downward departure. Application Notes 12 and 15, require the district court to determine whether sentencing entrapment has occurred. See U.S.S.G. § 2D1.1, comment. (nn. 12, 15). Under Application Note 12, the district court "shall exclude" from the calculation the amount of drugs that flow from sentencing entrapment. Application Note 12 states, in relevant part:

> If, however, the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

U.S.S.G. § 2D1.1, comment. (n. 12). This guideline, in part, focuses on the defendant's intent or predisposition. Further, under Application Note 15, a downward departure is warranted when a form of sentencing entrapment occurs. Application Note 15 states, in relevant part:

If, in a reverse sting . . . the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

U.S.S.G. § 2D1.1, comment. (n.15).

We have most recently defined sentencing entrapment as follows: "Sentencing entrapment occurs when official [government] conduct leads a defendant predisposed to deal only in small quantities of drugs to deal in larger quantities, leading to an increased sentence." United States v. Berg, 178 F.3d 976, 981 (8th Cir. 1999) (citing United States v. Barth, 990 F.2d 422, 424 (8th Cir. 1993)). The focus of the sentencing entrapment analysis is on the predisposition of the defendant to commit the crime. See United States v. Stuart, 923 F.2d 607, 613-14 (8th Cir. 1991) (focusing the sentencing entrapment analysis on the defendant's predisposition by analogy to the long-standing entrapment defense analysis).

Here, at the sentencing hearing, the district judge said:

I'm applying the law that's quite clearly set forth in United States versus Stavig, which is the Eighth Circuit case, 80 F.3d 1241. I recognize, as that court stated, that sentencing entrapment is a viable theory when outrageous government conduct overcomes the will of a defendant predisposed to deal only in small quantities of drugs, and in this case it would be in other types of drugs; but, in my view, both Mr. Searcy and the people he was working with, including Mr. White, did what they did for their own purposes and were not persuaded to do so by government agents.

-6-

I do not agree with the conduct of Mr. Mendoza and such other government agents as may believe that they should do what they can to ensnare people in criminal conduct, but in this case I find that their -- that is, Mr. Searcy's conduct was not because he was talked into doing it. His conduct he brought upon himself.

(Sent. Tr. at 314.)

We consider these comments in light of the government's argument at the sentencing hearing. The government argued that sentencing entrapment requires more than mere persuasion. The government argued that sentencing entrapment requires outrageous government conduct. It seems that to show sentencing entrapment the district court required that the defendant's will be overborne by government conduct amounting to force, coercion, or intimidation. The district court should have focused on the defendant's predisposition.

In this regard, we believe the district court's ruling denying entrapment may have been flawed.[2] As we have mentioned, the evidence shows that Searcy never dealt crack until Watkins, working as a government informer, coaxed Searcy to sell crack. The district court determined that the government's conduct was not outrageous. The government's conduct, however, does not have to be outrageous. Rather, the facts should be evaluated by focusing on the defendant's predisposition. Therefore, the district court's emphasis on outrageous conduct was improper.

The government argues that, despite <u>Berg</u>, outrageous government conduct is part of the sentencing entrapment analysis. Searcy argues that outrageous conduct is not part of the sentencing entrapment analysis and that, even if it were, after the Supreme Court's decision in <u>Jacobson v. United States</u>, 503 U.S. 540 (1992),

---

[2]Neither counsel called the district court's attention to <u>United States v. Berg</u>, 178 F.3d 976 (8th Cir. 1999), the most recent case defining sentencing entrapment.

outrageous government conduct is no longer part of the entrapment defense and should not be part of the sentencing entrapment analysis.

We recognize that many of our sentencing entrapment cases have mentioned outrageous government conduct as part of the sentencing entrapment analysis. See United States v. Lenfesty, 923 F.2d 1293, 1300 (8th Cir.) (mentioning sentencing entrapment as a potential basis for a downward departure and defining the analysis to require outrageous government conduct), cert. denied, 499 U.S. 968 (1991); see also United States v. Warren, 16 F.3d 247, 250-51 (8th Cir. 1994) (determining government's conduct not outrageous); United States v. Hulett, 22 F.3d 779, 782 (8th Cir. 1994) (determining the government's below market price drugs did not induce defendant to purchase greater quantity); United States v. Aikens, 64 F.3d 372, 376 (8th Cir. 1995) (determining government conduct was not outrageous) (vacated and remanded on other grounds, 517 U.S. 1116 (1996)); United States v. Stavig, 80 F.3d 1241, 1245-46 (8th Cir. 1996) (determining that government's credit arrangement making defendant's drug purchase possible was not outrageous).

We hold that the sentencing entrapment analysis focuses on the defendant's predisposition. In Lenfesty, the court mentioned sentencing entrapment as "outrageous official conduct [that] overcomes the will of an individual predisposed only to dealing in small quantities [of drugs]." 923 F.2d at 1300 (citing United States v. Jacobson, 916 F.2d 467, 470 (8th Cir. 1990) (en banc) ("Jacobson I") (rev'd on other grounds, 503 U.S. 540 (1992) ("Jacobson II")). Lenfesty did not confirm sentencing entrapment as a valid legal claim and it did not fix the sentencing entrapment analysis. Berg is the latest Eighth Circuit sentencing entrapment case and we are bound by its analysis focusing on predisposition. Berg does not mention outrageous government conduct.

-8-

Of course, the government's conduct is relevant in a sentencing entrapment analysis, but only insofar as it provides the inducement.[3]

As we have observed, the Sentencing Guidelines focus the sentencing entrapment analysis on the defendant's predisposition. The Sentencing Guidelines never mention outrageous government conduct. See U.S.S.G. § 2D1.1, comment. (nn. 12, 15). Application Note 12 focuses on the defendant's predisposition in authorizing the district court to exclude from the base offense level calculation the amount of drugs the defendant did not intend to produce. See U.S.S.G. § 2D1.1, comment. (n. 12). Application Note 15 enables the district court to grant a downward departure where, in a reverse sting operation, the government's price manipulations enable the defendant to purchase greater quantities of a drug. See U.S.S.G. § 2D1.1, comment. (n. 15).

We note that this case concerns a reverse sting operation like the Sentencing Guidelines' example. Application Note 15 concerns the quantity of drugs involved in an offense when the government's price manipulations enable the defendant to purchase greater quantities of a drug. Here, the government coaxed Searcy to cook powder cocaine into crack. The Sentencing Guidelines treat crack as a greater quantity of powder and so, even though crack and powder may be considered different kinds of drugs, the Guidelines treat them as different quantities of the same drug. Under the

---

[3]The claim of outrageous government conduct rests on the Due Process Clause of the Fifth Amendment. See United States v. Russell, 411 U.S. 423, 431-32 (1973) (mentioning outrageous government conduct as a viable claim); see also Hampton v. United States, 425 U.S. 484, 490 (1976) (determining that the limitations of the Due Process Clause of the Fifth Amendment are implicated when government conduct violates some protected right). By contrast, entrapment focuses on the predisposition of the defendant to commit the crime. See Sorrells v. United States, 287 U.S. 435, 442 (1932) (focusing entrapment analysis on defendant's predisposition); see also Russell, 411 U.S. at 432-33 (focusing entrapment analysis on defendant's predisposition). Likewise, the predisposition of the defendant seems to be the important issue for the sentencing entrapment analysis.

Sentencing Guidelines, for any given quantity of crack, the guideline range is the same as if the offense had involved 100 times that amount of powder cocaine. <u>See</u> U.S.S.G. § 2D1.1(c).

In addition, Supreme Court precedent supports our analysis. The Supreme Court's long-standing entrapment analysis focuses on the defendant's predisposition to commit the crime. Insofar as <u>Lenfesty</u>'s analysis of sentencing entrapment relied, by analogy, on <u>Jacobson I</u>, 916 F.2d at 470, that precedent was overruled by <u>Jacobson II</u>, 503 U.S. at 548-49. In <u>Jacobson II</u>, the Supreme Court reaffirmed that the entrapment analysis focuses on the defendant's predisposition. Therefore, by analogy to the Supreme Court's well-established entrapment defense analysis, our sentencing entrapment analysis must focus on the defendant's predisposition to commit the crime.

Therefore, we remand this issue to the district court to reconsider whether Searcy was a victim of sentencing entrapment under the standards expressed in <u>Berg</u> and in this opinion and, if so, whether there should be a downward departure.

## B. Acceptance of Responsibility

Searcy argues that he is entitled to a three-level reduction for acceptance of responsibility. We disagree.

The Sentencing Guidelines, § 3E1.1, concerning acceptance of responsibility provides in relevant part:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the

investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1)     timely providing complete information to the government concerning his own involvement in the offense; or

(2)     timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by **1** additional level.

U.S.S.G. § 3E1.1

The district court granted Searcy a two-level reduction for acceptance of responsibility under § 3E1.1(a) and denied him an additional one-level reduction in his offense level under § 3E1.1(b).  The district court reasoned:

> I'm not going to give you a full three levels reduction for acceptance of responsibility.  I'll allow a two-level reduction because you have pleaded guilty and prevented -- or made it unnecessary to go to trial.  The third level -- the third point for acceptance of responsibility is appropriate only when it's a prompt plea and when there are no complications arising out of it.  We've had nothing but complications here, made largely due to conduct of yours, which I think was a failure to respect the importance of an oath and testify to what you actually saw or heard rather than what you hoped you may have heard or seen.  You are not entitled to the third point for acceptance of responsibility.

(Sent. Tr. at 316.)

Searcy argues that he is entitled to a three-level reduction for acceptance of responsibility because he immediately confessed the crime, admitted his culpability,

and indicated his intent to plead guilty. The government argues that Searcy is not entitled to a three-level reduction in his offense level because his guilty plea came late and did not permit the government to avoid preparing for trial or permit the court to allocate its resources efficiently.

We will not disturb a district court's decision to deny or grant a credit for acceptance of responsibility unless that decision is clearly erroneous. See United States v. Furlow, 980 F.2d 476, 476 (8th Cir. 1992); see also United States v. Amos, 952 F.2d 992, 995 (8th Cir. 1991). As with other findings of fact, the district court is in a unique position to evaluate a defendant's acceptance of responsibility. Id.

The Guidelines state that a defendant who enters a guilty plea is not automatically entitled to a downward adjustment under § 3E1.1. See United States v. Thompson, 60 F.3d 514, 517 (8th Cir. 1995). In Thompson, we faced a similar set of facts, and we affirmed the district court's decision. There we noted that the defendant did not plead guilty until the morning of his scheduled trial date and that his late plea did not enable the government to avoid preparing for trial. See id. In United States v. Ervasti, 201 F.3d 1029, 1044 (8th Cir. 2000), we reasoned that judicial economy and the government's trial preparations were essential elements for a § 3E1.1(b) reduction.

Searcy did not enter a timely plea. Searcy's plea agreement came too late to save the government or the court from preparing for trial. Therefore, the district court did not clearly err in denying Searcy a one-level acceptance of responsibility reduction under § 3E1.1(b).

## III.   CONCLUSION

We affirm the district court's decision on Searcy's acceptance of responsibility claim. However, we remand this case to the district court to reconsider whether Searcy

was a victim of sentencing entrapment and, if so, to take such action as may be appropriate in conformity with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.